IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW M. PAMPENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:18-cv-00488 |
| v. | ) |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| PNC FINANCIAL SERVICES GROUP, INC. | ) |
| AND AFFILIATES LONG TERM | ) ECF Nos. 33, 36 |
| DISABILITY PLAN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION ON PLAINTIFF'S AND DEFENDANT'S CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I. Summation**

In this civil action, Plaintiff brings a claim for long term disability ("LTD") benefits pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et. seq*. Before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 36) and Defendant's Motion for Summary Judgment (ECF No. 33). As set forth below, the Court concludes that the decision to terminate Plaintiff's benefits clearly met the applicable arbitrary and capricious standard of review. It was founded on a comprehensive and reasonable reading of the record and gave appropriate consideration to the medical records submitted by Plaintiff, including the records and opinions of treating physicians. As the only reasonable finding is that the Administrator's determination met the applicable standard, Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 will be granted and, correspondingly, Plaintiff's Motion will be denied.

1

## II. Factual and Procedural History

Although the record before the Court is voluminous, there is repetition of medical and other documentation. Moreover, much is undisputed in the parties' filings and both parties have presented the facts with substantial accuracy from the Joint Administrative Record. *See generally* Joint Administrative Record ("AR"), ECF No. 32; Plaintiff's Concise Statement of Material Facts ("Plaintiff's CSMF"), ECF No. 38; Defendant's Statement of Undisputed Material Facts ("Defendant's CSMF"), ECF No. 35; Plaintiff's Response to Defendants CSMF ("Plaintiff's Response"), ECF No. 39; Defendant's Response to Plaintiff's CSMF ("Defendant's Response"), ECF No. 41.

Plaintiff, Andrew Pampena, is a participant and beneficiary of a PNC Financial Services Group, Inc. and Affiliates ("PNC") long-term disability plan governed by ERISA (the "Plan"). Pursuant to the terms of the Plan as set forth in the Summary Plan Description ("SPD"), and the Administrative Services Agreement between PNC and Liberty Life Assurance Company of Boston ("Liberty"), the latter was duly designated and authorized to conduct reviews of claims and appeals as the third-party Claims Administrator. The Plan is self-funded and approved benefits are paid from a Group Benefits Trust Fund. *See* ECF No. 35 at 1-4 (citing AR); ECF No. 39 at 2 (admitting).

Plaintiff was employed as an Underwriter at PNC from 2010 through June 8, 2016. AR591; ECF No. 35 at 5. On June 9, 2016, Plaintiff underwent cervical discectomy and fusion surgery on the recommendation of Dr. El-Kadi, his neurosurgeon. *See* AR at 605-608. Dr. El-Kadi's pre-operative report indicates that Plaintiff had "multilevel spinal and foraminal stenosis, significant collapse of the disk space, [and] cervical radiculopathy" and suffered from worsening "neck pain, radiating down bilaterally to his shoulder and intrascapular area." The pain on his

right side radiated down to his hand, where he also had "decreased sensation." *Id.* Surgery was performed to arrest disease progression and "relieve pressure from the nerve roots". *Id.* As reported by Dr. El-Kadi to Plaintiff's treating general physician, Dr. Flaherty, Plaintiff was discharged on steroids and pain medication, but experienced increasing pain on cessation of steroid use. Further limited-term steroids and alternative pain medications were reinstated at Plaintiff's June 27, 2016 post-operative evaluation. AR at 609-611. At his mid-July 2016 reevaluation Plaintiff reported experiencing pain and numbness but at a lesser level than pre-surgery, and was assessed as having steady ambulation, "significantly improved" right upper range of motion, and a "stable" cervical spine x-ray. Dr. El-Kadi noted it was early in the recovery period, and his recommendations included extended recovery time and physical therapy. Pain medication was prescribed. AR 612-614.

The final neurosurgeon's evaluation by Dr. El-Kadi, dated August 24, 2016, states Plaintiff reported increasing symptom severity, including radiating neck pain and numbness, for which he was re-prescribed pain medication, and recommended heat, therapy and a month's further extension of recovery time. Dr. El-Kadi noted that Plaintiff's cervical x-ray showed no evidence of complication or failure. Subsequent cervical and lumbar spine MRIs on September 6, 2016 showed improvement to the cervical spine with no new disc protrusion and no significant compromise of the brain stem and cord, and facet arthrosis most pronounced at L4-5 and L5-S1. [ECF No. 35 at 5-6](); [ECF No. 39 at 2-3]().

Plaintiff was seen for physical therapy by Dr. Reidy, who on August 29, 2016 reported Plaintiff's movements as "free and easy including on [and] off the examination table". AR 233-65, 423-429; [ECF No. 35 at 9]().

On August 29, 2016, Plaintiff submitted a disability benefit claim to Liberty together with medical records and Dr. El-Kadi's letter of post-surgical work disability through late September 2016. Plaintiff returned to work full time on October 3, 2016. Plaintiff's medical records were reviewed by Defendant's independent surgical neurologist, Dr. Trombly, who submitted his report on October 5, 2016 and supported Plaintiff's work disability for three months - through September 8th. Plaintiff was approved LTD benefits effective September 8th (following the Plan's 91-day elimination period) through October 2, 2016 and the claim was closed. ECF No. 35 at 6-7; ECF No. 39 at 3-4.

Plaintiff continued physical therapy during this time and Dr. Reidy noted: (1) in late October that Plaintiff "[found] it difficult" to return to work, (2) in late November that in "[Dr. Reidy's] area of practice specifically related to [Plaintiff's] spinal complaints, [he] would not see any justification for any degree of disability from his sedentary job beyond [the end of December, 2016]," and (3) in late December, at Plaintiff's final visit, Dr. Reidy reiterated that he "certainly would not feel [Plaintiff] is disabled from performing sedentary work." ECF No. 35 at 10, ECF No. 39 at 5. Dr. Reidy noted, as to Plaintiff's scans: "[H]e has spondylolisthesis . . . without advanced stenosis. He has some degenerative disc changes." ECF No. 41 at 9; AR 240.

Plaintiff discontinued working as of November 28, 2016, owing to back pain and related physical/activity restrictions. On December 22, 2016 he notified Defendant of his further work disability and provided a letter from his treating chiropractor, Dr. Nutter, stating that Plaintiff was unable to sit/stand/walk for more than ten minutes at a time, but also that permanent restrictions

4

were not anticipated and Dr. Nutter estimated Plaintiff could return to work on February 12, 2017. ECF No. 35 at 7-8, ECF No. 39 at 4.[1]

Plaintiff's medical records were internally reviewed by Defendant's Nurse Bieteru, who issued a January 5, 2017 finding that Plaintiff's complaints of pain and medical records - including chiropractor's treatment, referral to a pain doctor, surgical history and MRI showing lumbar spondylothesis - reasonably supported weight-bearing, sitting/standing/walking, and other movement restrictions through March 12, 2017 to allow continued recovery time, treatment and specialist follow-up. By letter of January 9, 2017, Defendant reinstated Plaintiff's LTD benefits effective November 29, 2016 and with the expressed intent to periodically re-evaluate his claim. ECF No. 35 at 8; ECF No. 39 at 4.

An independent physician review was conducted by Dr. Kroski, who is board certified in physical medicine and rehabilitation with a subspecialization in pain medicine. Dr. Kroski reviewed Plaintiff's entire medical record. He also sought communication with Dr. Nutter and Dr. Flaherty, and spoke to Plaintiff's pain management physician, Dr. Lieber, who had not made any assessment of Plaintiff's work capacity.[2] He opined in his May 9, 2017 report that Plaintiff's

---

[1] The records indicate that Plaintiff received chiropractic consultation/treatment with Dr. Nutter from December 12, 2016 through April 13, 2017. *See* AR 278-88. Dr. Nutter's records include a February 3, 2017 "detailed exam" notation that Plaintiff was "30-40% improved since the start of treatment". The visit records also consistently include both Plaintiff's subjective reports of degree and locations of pain and treatment response, as well as objective assessments of spinal dysfunction and degeneration, "moderate tenderness", localized pain and "mildly restricted range of motion" with pain. *Id.*

[2] *See* AR 274-77 (records of Dr. Lieber regarding initial visit April 7, 2017 and plan of treatment). *See also* AR 314 (Dr. Kroski's report notes of conversation with Dr. Lieber indicating that Plaintiff was seen for an evaluation and an epidural steroid injection, which was delayed for insurance authorization, and Plaintiff had not returned to Dr. Lieber for follow up. Dr. Lieber also indicated willingness to perform a capacity evaluation on follow up. There is nothing further of record.)

5

medically-supported diagnoses of lower back pain, cervical degenerative disk disease, and myofascial pain syndrome were not severe enough to cause impairment. ECF No. 35 at 10; ECF No. 39 at 5; AR 217.

Liberty terminated Plaintiff's LTD benefits by letter effective May 10, 2017 based on its review of the Plan terms, medical files, and Dr. Kroski's determination, from which it concluded that Plaintiff "no longer [met his] Plan's definition of disability as [he had] the capacity to perform [his] occupation." *Id.*; AR 206. Plaintiff appealed by counsel's letter of June 5, 2017, asserting that despite compliance with therapies, medications and reviews he still suffered from a pain level and medications which prevented him from performing even sedentary positions, as documented by pain management records. AR 197. Plaintiff re-provided and supplemented his medical treatment records, including those of Dr. Cosgrove (AR 247-51) (pain medicine),[3] Dr. Conermann (pain medicine) (AR 146-73),[4] Dr. Manocha (rheumatology) (AR 190-95), Dr. Franco (physical medicine and rehabilitation), and Harry Binenkorb, a clinical social worker (AR 174-85). ECF No. 35 at 11-12.[5]

---

[3] Dr. Cosgrove indicates Plaintiff was seen November 9, 2016 for a spinal epidural injection with a primary diagnosis of spinal stenosis on referral from Dr. Reidy (who Plaintiff saw again for injection on November 28, 2106).

[4] The records indicate that Plaintiff was seen in March, 2016 (pre-surgery) for spinal epidural injection by Dr. Conermann, and again in May-June, 2017 for pain management (injection/medication).

[5] As noted in Plaintiff's Response to Defendant's CSMF, ECF No. 39 at 6, his medical records indicate his reporting of debilitating pain aggravated by activity, and that: he received spinal injections, his physicians discussed possible nerve blocks, he was recommended (and did) follow up with neurology and rheumatology specialists, he was prescribed Fentanyl pain medication patches, and he had no prescription history "inconsistencies". Plaintiff also correctly recounts that he was diagnosed with "post-laminectomy pain syndrome with bilateral lower extremity radicular pain" (by his pain medication provider, Dr. Conermann). *Id.*; AR 154.

An internal review was conducted by Nurse Dennis, who in July 2017 found that the updated records indicated Plaintiff's continued report of pain symptoms but "minimally abnormal diagnostic reports, and varying exam findings" with "continued work up with several specialty providers." She further noted that "further review of updated medical [records] and medicals on file may be warranted." ECF No. 35 at 12; ECF No. 39 at 6. Plaintiff underwent cervical, thoracic and lumbar spine scans in July demonstrating degenerative changes and disc protrusion with some ventral cord contact, but no cord compression or high grade canal, spinal or foraminal stenosis. ECF No. 35 at 12-13; ECF No. 39 at 6-7.

A further internal physician review was conducted by Dr. Monti, board certified in pain management and rehabilitation, who found, by letter report of September 6, 2017, that despite "significant work up" by multiple physicians, "no specific generator" of Plaintiff's pain was identified. He further noted Dr. Reidy's conclusion that Plaintiff did not have disability from sedentary work related to his spinal condition, and noted that Plaintiff had provided limited abnormal physical exam findings, and had provided no support of restrictions or limitations from his treating physicians. Dr. Monti went on to opine that Plaintiff had permanent restrictions owing to spinal fusion and degenerative changes which would limit weight-bearing and somewhat restrict overhead reaching, bending and cervical extension, but that Plaintiff retained

---

The Administrative Record citations given do not appear, however, to "contain statements from Plaintiff's treating physicians" expressly or directly "supporting Plaintiff's LTD claim." *Compare, e.g.,* AR 157 (Dr. Conermann's notation that in response to Plaintiff's May 2017 work disability inquiry, he advised Plaintiff that his goal was to maximize "activity and functioning" and he did not "document or assess disability or work status").

sustainable workday capacity. ECF No. 35 at 13-14; ECF No. 39 at 7-8.[6] Dr. Monti provided an addendum review on October 11, 2017, following conversation with Dr. Conermann, in which the latter opined that although he did not evaluate patients for disability, based on Plaintiff's reports he did not believe Plaintiff could return to work. Dr. Monti stated this communication did not alter his assessment. ECF No. 35 at 15. *See also supra* n. 5; ECF No. 34 at 2 (correctly asserting that "only one of Plaintiff's treating physicians supported [Plaintiff's] claim [of occupational disability] beyond the benefit termination date, and his support was non-specific and admittedly not based on any objective medical evidence").

The decision to terminate Plaintiff's LTD benefits was upheld on appeal by letter dated October 31, 2017 acknowledging that Plaintiff "may continue to experience symptoms associated with [his] conditions. However, the information does not contain exam findings, diagnostic test results, or other forms of medical evidence substantiating that [Plaintiff's] symptoms were of such severity, frequency, and duration that they resulted in restrictions and limitations rendering [him] unable to perform the duties of [his] occupation." ECF No. 35 at 15, AR 45.

The parties agree that administrative review procedures have been exhausted. Pending before the Court are the above-noted cross Motions for Summary Judgment.

**B.** Pertinent sections of the Plan are as follows:

For the first 24 months (from the date LTD benefits begin): you are disabled if your disability makes you unable to perform the material or essential duties of your own occupation as it is normally performed in the national economy.

After you have been disabled for 24 months: you are disabled if your disability makes you unable to perform the material duties of any occupation for which you

---

[6] An internal vocational assessment conducted on September 7, 2017 concluded that Plaintiff's regular occupation was sedentary to light physical demand (as it occasionally required out of office meetings). ECF No. 35 at 14-15; AR 93-95.

are or can become qualified to perform by education, training or experience.

The claims administrator determines whether your disability meets these definitions.

LTD benefits may be terminated when 'You are no longer disabled, as defined by the Plan and determined by the claims administrator.'

If you have a second period of disability within six months of returning to your regular job on an active full-time basis that is due to the same or a related cause as your first disability, it will be considered a continuation of your earlier disability.

ECF. No. 35 at 3-4 (with citations to AR); ECF No. 39 at 2.

**C.** In his Motion for Summary Judgment, ECF No. 37 at 3, Plaintiff alleges that he is fully disabled and Defendant's decision to terminate his LTD benefits was "illegal and unreasonable". Specifically, Plaintiff asserts that he "cannot perform regular and substantial work as an Underwriter I due to chronic pain and discomfort, cognitive limitations and inability to perform substantial gainful activity over a 40+ hour work week" and that he "is completely disabled from his vocation . . . due to his physical disabilities." *Id.* at 4; ECF No. 38 at 3-4.[7]

Defendant, in its Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 34, asserts that there was no abuse of discretion in its termination of Plaintiff's LTD benefits as he was no longer disabled within the meaning of the Plan. It further asserts that determination was reasonably based on the evidence submitted during the administrative processes, including the records of Plaintiff's treating physicians and the conclusions of multiple physician reviewers. *Id.* at 1-2.

---

[7] *See also id.* at 4 (Plaintiff's recount of persistent chronic back pain, numbness/tinging in his extremities, bilateral shoulder and neck pain – all contributing to nausea, headaches, dizziness, stiffness, sleep deprivation, depression and concentration impairment). Defendant correctly observes that Plaintiff's medical record citation to Dr. Lieber's report does not support the symptoms for which it is cited. *See* ECF No. 38 at 4, ECF No. 41 at 7.

### III. Standard of Review

#### A. Summary Judgment Standard

Summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, (1986). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support the claim; rather, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See* Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir.1992). *See also* Celotex, 477 U.S. at 324 (observing that Rule 56(e) permits a summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).

#### B. Standard of Review as ERISA Matter

"A denial of benefits is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where, as here, such discretionary authority has been expressly granted, the deferential "arbitrary and capricious" standard applies to the eligibility decision.

*Estate of Schwing v. The Lilly Health Plan,* 562 F.3d 522, 525–26 (3d Cir.2009). "The arbitrary and capricious standard is also applicable where reviewing decisions are made by parties other than the administrator, so long as the plan provides that the administrator can delegate the duty to another party, and the administrator properly designated that duty." *Cipriani v. Liberty Life Assurance Co. of Boston,* No. 4:12-CV-1335, 2015 WL 5923454, at *2 (M.D. Pa. 2015), *citing Parelli v. Bell Atl.–Pa.,* No. 98-3392, 2000 WL 764914, at *3 (E.D. Pa. 2000).

Under the arbitrary and capricious standard of review, the Court may only overturn the benefit eligibility determination if "it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.,* 632 F.3d 837, 845 (3d Cir.2011). Substantial evidence is "sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Retirement Plan,* 214 F.3d 136, 142 (3d Cir.2000) (quoting *Daniels v. Anchor Hocking Corp.,* 758 F.Supp. 326, 331 (W.D.Pa.1991)). "Plaintiff has the burden of proof that the Plan Administrator's decision to deny benefits is an arbitrary and capricious decision." *Brandeburg v. Corning Inc. Pension Plan For Hourly Employees,* No. CIV A. 04-1314, 2006 WL 2136481, at *1 (W.D. Pa. 2006), aff'd, 243 Fed.Appx. 671 (3d Cir. 2007). "Under this narrow standard, the reviewing court is not free to substitute its own judgment for that of the plan administrator." *McDonald,* 2014 WL 4660683 at 4 (internal citations omitted).

The arbitrary and capricious standard of review is subject to two potential modifications:

First, where a defendant makes both eligibility decisions and pays any benefits that may be owed, a *structural* conflict of interest exists. But where, as here, a plan administrator duly authorizes discretionary benefit determinations to a third-party claims administrator, those

11

circumstances do not create a structural conflict of interest. *Miller v. American Airlines, Inc.,* 632 F.3d 837, 845 (3d Cir.2011). [8]

Second, in assessing a decision a reviewing court must also consider *procedural* conflicts of interest. *Berkoben v. Aetna Life Ins.,* 8 F.Supp.3d 689, 706 (W.D. Pa. 2014). A procedural conflict of interest arises when there are irregularities in the process employed in denying a claim, and may take the form of evidence of bias, such as "self-serving selectivity" in the use and interpretation of expert reports. *See Sivalingam v. Unum Provident Corp.,* 735 F.Supp.2d 189, 195 (E.D.Pa. 2010) (citing *Post v. Hartford Ins. Co.,* 501 F.3d 154, 162, 164-65 (3d Cir.2007)).[9] In considering the process as to a particular claim, the court must consider "numerous 'irregularities' to determine 'whether . . . the administrator has given the court reason to doubt its fiduciary neutrality.'" *Miller*, 632 F.3d at 845 (citing *Post,* 501 F.3d at 165). Ultimately, a court will "determine lawfulness" by weighing case specific factors, *id.*, and while conflict of interest is an important factor in determining abuse of discretion, its existence does not change the arbitrary and capricious standard of review. *Haisley v. Sedgwick Claims Management Services, Inc.,* 776 F.Supp.2d 33, at n. 9 (W.D.Pa.2011). [10] Moreover, as discussed *supra*, here

---

[8] *See also Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 108, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008) (abandoning "sliding scale" approach) ("The reviewing court should consider [a structural] conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits ... and ... the significance of the factor will depend upon the circumstances of the particular case."). *Compare* ECF No. 36 at 8-9 (erroneously presenting prior "sliding scale" standard). Plaintiff erroneously asserts a heightened standard of review in this case owing to both misunderstanding of the law and a factually unsupported assertion that Liberty's designation as third-party Claims Administrator created a structural conflict in the context of this PNC self-funded plan. *See supra* at 2 (citing ECF No. 35 at 1-4; ECF No. 39 at 2). *See also* ECF No. 40 at 5 ("[T]he Plan is not funded by an insurance policy, and Liberty provides only administrative services in support of the Plan").

[9] *See also Glenn,* 554 U.S. at 118 (noting that "emphasiz[ing] a certain medical report that favored a denial of benefits [and] deemphasiz[ing] certain other reports that suggested a contrary conclusion" are "serious concerns").

[10] *See also Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 108, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008) (abandoning "sliding scale" approach) ("The reviewing court should consider

the Court finds no evidence of procedural irregularities to be weighed against Defendant in judicial review.[11]

IV. Analysis

As detailed in Section II, *supra*, the Administrative Record, including the internal and peer reviews conducted, indicates that Defendant's determination was supported by several thorough considerations of Plaintiff's records – Plaintiff's reports, treating physicians' medical notes, examinations, test results,[12] *etc.* – and an occupational review. *See* ECF No. 34 at 6 (citing to Defendant's CSMF with AR citations). The record contains indications not only from reviewing physicians Drs. Trombley and Kroski, but also from Plaintiff's own physicians, that - at or prior to the time his benefits were terminated – Plaintiff's medical findings did not support a degree of disability precluding sedentary work. *See* ECF No. 34 at 7. In fact: "Defendant terminated LTD benefits . . . eight months after Dr. Trombley's suggested return-to-work date, two months after the internal nurse's suggested return-to-work date, five months after [treating] Dr. Reidy's suggested return-to-work date, eight months after [treating] neurosurgeon Dr. El-Kadi's suggested return-to-work date, and three months after [treating] chiropractor Dr. Nutter's suggested return-to-work date." *Id.* at 11 (citations omitted).

---

that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits ... and ... the significance of the factor will depend upon the circumstances of the particular case."). *Compare* ECF No. 37 (erroneously presenting prior "sliding scale" standard).

[11] As Defendant fairly observes, Plaintiff's assertion that Defendant "wholly failed to take into consideration the medical records of [his] treating physicians and . . "cherry-pick[ed] medical highlights" stands totally unsupported in either the Administrative Record or Plaintiff's Brief in Support. ECF No. 37 at 13.

[12] These included CT scans, CT myelogram, MRIs and x-rays. *See* ECF No. 34 at 14; *See generally* ECF Nos. 35, 38.

Moreover, as Defendant duly notes, Plaintiff did not "provide any record showing that any [of his numerous] treating physician supported his claim of impairment beyond the benefit termination date." *Id.* at 7, 10. The only support came in a phone call with Dr. Conermann, who based his opinion on Plaintiff's complaints and provided no "specific restrictions, limitations or impairments" and acknowledged no "objective medical evidence." *Id.* at 10-11; ECF No. 40 at 9 ("Defendant's determination . . . largely rested on the lack of support from Plaintiff's own treating physicians . . . ."). *See Ellis v. Hartford Life and Acc. Ins. Co.*, 594 F.Supp.2d 564, 569 (E.D. Pa. 2009) (administrator did not abuse discretion in terminating LTD benefits where no treating physician opined in support of inability to perform own occupation, with sole exception of one who also noted lack of objective clinical findings). *See also Balas v. PNC Financial Serv. Group, Inc.*, 2012 WL 681711, *10 (W.D. Pa. 2012) (administrator did not abuse discretion in denying LTD benefits where treating physicians provided no restrictions/limitations or physical evidence supporting impairment from own occupation); *Krash v. Reliance Standard Life Ins. Co.*, 248 F.Supp.3d 600 (M.D. Pa. 2017) (administrator did not abuse discretion in terminating benefits where no physician identified objective evidence of impairment from back condition, treating physicians noted good muscle strength/tone, independent physicians determined non-impairment from sedentary work, and the SSA denied Plaintiff's claim for benefits).[13]

---

[13] The Court notes that even if this were a case of significantly conflicting, grounded opinions amongst physicians, which it is not, the law in that regard is that:

Under the ERISA framework, plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black and Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). But plan administrators need not give treating physicians more weight than non-treating physicians. *Id.* And they may properly credit one physician's professional opinion over another physician's contrary professional opinion without its being viewed as arbitrarily refusing to credit reliable medical evidence. *See Stratton,* 363 F.3d at 258.

Finally, Defendant's determination to uphold its termination of benefits, following further review and the report of Dr. Monti, was response to Plaintiff's appeal, was clearly as reasonable one. *Id.* at 9-10. Despite Plaintiff's assertions to the contrary, particularly in the context of the paper record before it and the comprehensive reviews undertaken, the Administrator's election not to require/request an in-person independent medical examination as part of its review process was not an abuse of discretion. Rather, "numerous courts in [the Third C]ircuit have held that there is no legal requirement for a plan administrator to demand an independent medical examination as part of its review of a claim for disability benefits under an ERISA-governed plan, even if the plan permits it to do so." *Killian v. Hartford Life & Accident Ins. Co.,* No. CV 16-1377, 2017 WL 429905, at *14 (E.D. Pa. 2017), *citing Sollon v. Ohio Cas. Ins. Co.,* 396 F.Supp.2d 560, 586 (W.D. Pa. 2005) "Indeed, ERISA does not require plan administrators to perform any physical examinations." *Killebrew v. Prudential Ins. Co. of Am.,* No. 3:15-CV-01415, 2017 WL 1519500, at *18 (M.D. Pa. 2017), citing *Lamanna v. Special Agents Mut. Benefits Ass'n,* 546 F.Supp.2d 261, 296 (W.D. Pa. 2008). *See also* ECF 34 at 12 (citing *Pini v. First Unum Life Ins. Co.*, 2013 U.S. Dist. LEXIS 158080 at *69 (3d Cir. Nov. 5, 2013) (administrator did not abuse its discretion by relying on paper review in lieu of in-person examination); *Dolfi v. Disability Reinsurance Management Servs.*, 584 F.Supp.2d 709, 735 (M.D. Pa. 2008)).

Throughout the LTD review process Plaintiff had the opportunity to, and did, submit information in support of his claim. Defendant had sufficient evidence to reasonably determine that a physical examination was not needed. It provided a thorough and referenced review and determination. The Court notes that this case is *not* before it on *de novo* review. But even if it were, the Court would be inclined to find Defendant's determination - that Plaintiff "did not

demonstrate" that his "permanent restrictions and limitations . . . prevented him from working his own occupation" - not only unequivocally reasonable but correct. ECF No. 34 at 15. *See* Plaintiff's Brief in Support, ECF No. 37 at 8-12 (Plaintiff's own "Highlighted Medical Summary in support of Plaintiff's Own Occupation Disability").

**V. Conclusion**

For the reasons above, this Court holds that no reasonable fact-finder could conclude that the termination of Plaintiff's benefits was "without reason, unsupported by the evidence, erroneous as a matter of law, irrational arbitrary, or capricious." *Cimino v. Reliance Standard Life Ins. Co.*, 2001 WL 253791 at *6 (E.D. Pa. 2001). Accordingly, an appropriate Order granting summary judgment to Defendant will be entered.


Dated: April 18, 2019

By the Court:


/s/ Lisa Pupo Lenihan___
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Counsel of record